Brett L. Gibbs, Esq. (SBN 251000)
Steele Hansmeier PLLC.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HARD DRIVE PRODUCTIONS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DOES 1-53, ) <br> ) <br> Defendants. ) <br> ) <br> _____ ) | **No. C-11-02330 EDL** <br><br> **SUPPLEMENTAL DECLARATION OF PETER HANSMEIER RESPONDING TO THE COURT'S JULY 14 ORDER** |

**SUPPLEMENTAL DECLARATION OF PETER HANSMEIER
RESPONDING TO THE COURT'S JULY 14 ORDER**

I, Peter Hansmeier, declare under penalty of perjury as true and correct that:

1. I am a technician at Media Copyright Group, LLC ("MCG"). My daily tasks include conducting day-to-day copyright infringement monitoring with respect to MCG's clients' copyrighted creative works, including the work relevant to the above-captioned action ("Violet"), which was fully described in Plaintiff's Complaint (Doc. No. 1 at ¶ 7). I submit this declaration in response to the Court's Order Denying Without Prejudice Plaintiff's Revised Application for Leave to Take Expedited Discovery (Doc. No. 11, hereinafter "Order"), which granted Plaintiff leave to submit "a revised declaration addressing whether or not the Doe Defendants named in this action all participated in a common swarm."

2. This affidavit is based on my own personal knowledge, and, if called upon to do so, I would be prepared to testify as to its truth and accuracy.

**Discussion**

3. The Court directed Plaintiff to submit a declaration with information regarding whether the Does in this suit were involved in a common swarm. Based on my reading of the Court's order, this technical issue is an important factor in assessing the propriety of joinder in this case. Based on my analysis of the data MCG collected during the course of copyright infringement monitoring with respect to the file in this case, my conclusion is that the Does in this case were in fact members of "a common swarm," and, further, the same exact swarm.

4. By way of background, a swarm is the aggregate group of individuals involved with uploading and downloading a particular file. In order for two individuals to be classified as being in the same swarm, there must be a connection between them. For instance, if one group of individuals ("Group A") distributed data only among themselves while another group of individuals ("Group B") distributed data only among their group—with no data transfer between the two groups— Groups A and B would be considered distinct and separate swarms. This, however, is not the case with the single swarm containing Doe Defendants in this case.

5. Identifying the boundaries of a swarm involves identifying an initial seed file and tracing its spread across BitTorrent trackers. We first spotted the Doe Defendant swarm on the Pirate Bay, a large and infamous torrent site. A user of the site uploaded the torrent in March of 2011. Other users downloaded the torrent, and began to share the file using trackers, distributed hash tables and other mechanisms. Shortly thereafter, enterprising BitTorrent users began to expand the size of the swarm by listing the torrent on other torrent indexing sites. I know that the swarm expansion was not the result of independent uploaders (a possibility specifically raised in the Court's Order) because the torrent file in question contained a unique combination of files that were associated with

2
SUPPLEMENTAL DECLARATION OF PETER HANSMEIER RESPONDING TO COURT'S ORDER   No. C-11-02330 EDL

a unique file hash. A file hash is a unique number that is generated from bits and bytes and is unique to a given file, distinguishing a torrent from all other torrents in existence. Through my tracking, I personally observed that all of the Doe Defendants in this case uploaded and downloaded this unique hash, thus "sharing" amongst each other the exact same file containing Plaintiff's copyrighted works.

6. Perhaps worth noting is the fact that I observed other swarms with respect to similar content (i.e. other files relating to our client's "Violet" scene, but with different file hashes—likely because the files were of a different resolution or the torrent files related to different combinations of videos and pictures). The infringers that we tracked in those swarms are <u>not</u> included in this suit. In other words, Plaintiff would have named more infringers in this suit if it had included infringers from other swarms.

### Conclusion

7. In my opinion, therefore, the observed interactions between Doe Defendants in this case were consistent with them participating in a common swarm. Considering it was the same file in the same swarm, it was not a situation where, as the Court postulates, "two or more *different* files of the same copyrighted work could potentially seed two or more different swarms" (Doc. No. 11 at

//

//

//

//

//

//

//

//

3
SUPPLEMENTAL DECLARATION OF PETER HANSMEIER RESPONDING TO COURT'S ORDER   No. C-11-02330 EDL

2, lns. 20-22). Again, in my opinion and through my personal observations, all IP Address listed in Exhibit A to the Complaint (Doc. No. 1 at 13) were engaged in activity in the same swarm in relation to the allegations of this lawsuit.

Executed on July 20, 2011, in Minneapolis, MN.

_____

Peter Hansmeier